Good afternoon, everyone. As you know, we have one case on the calendar this afternoon are Guetta Anariba v Garland, which had originally been scheduled for argument on December 7th, and we granted an adjournment to today and converted it to a zoom argument. Um, Judge Sack and I are delighted to be joined by Chief Judge Underhill from the District of Connecticut. We want to thank him for sitting with us by designation, notwithstanding as many duties as on the district court. Um, I've been advised that the attorneys are all present for the argument, so we will proceed with the appellant. Mr Rayfield. Thank you, Your Honor. May please the court. Mike Rayfield on behalf of the petitioner Angel Argetta. Yes, I see you have six minutes and Miss Matthews is getting two and then you're gonna have to for rebuttal. Is that how I'm going to address the cat issue in the particularly serious crime issue? And my colleague is going to address the view visa. Um, so starting with the cat issue, this is not an ordinary cat claim because unlike many cat petitioners, Mr Argetta has proven both that he was violently assaulted in the past and that his assailants and others are actively threatening him with death in Honduras. In 2000 and seven, Mr Argetta was assaulted and 13 and the notoriously violent Lagos family. Then in 2014, just before his release from prison, his family members in both countries all started getting the same message in a number of terrifying scenarios. Mr Argetta's mother was brutally beaten in her home by men demanding to know when Mr Argetta would return. And the only reason they spare for life was so that they could use her to find out when Mr Argetta did return. Um, both a family friend in Honduras and Mr Argetta's sisters got the same message from Fidel Lagos and members of the Lagos family that Mr Argetta would be killed when he returned. I gather. I'm sorry I interrupt. But I gather you had a reasonably powerful expert witness on this. And the I. J. Did not gather, didn't even mention that testimony in, in, in, in at least in writing and deciding the case. Is that correct? That's, that's correct. Neither the I. J. Nor the B. I. A. Mentioned this expert report even once. And under our position is that under this court's decision in Manning, that's reversible error on its own. Um, where the court found that there was error in the B. I. A. Is failure to consider the unrebutted expert report, which concluded that Manning's life was still at risk if he were to move to be removed to Jamaica. Mr Argetta's expert report was important for the exact same reason. It explains why, despite the passage of time, Mr Argetta remains in grave danger because it's because in the words of the report, quote, it is very difficult and nearly impossible for a member of a family who is part of a family feud to extract themselves from the feud, even after years or generations. And the agency ignored all of this. Um, and Mr Argetta's experience in the U. S. With the more recent threats and violence center around Honduras and the connection we would say is obvious. Everyone making death threats against Mr Argetta was referring to him directly by name. One of them in the case of his sister Rosa was Raynari Lagos himself, and one of them in the case of his mother said that he was sparing Maria's life precisely because Angel has to come home and that's who we want. So you had the neighbor's affidavit as well. Um, who said there was a specific reference that he'd be killed when he returned. This was from Lagos, his father, I guess, correct? That's correct. Fidel Lagos, according to, um, Dilchia Rivera, a family friend said, told her that when, quote, Angel arrived in Honduras, he would be killed. That's um, they are 1119. And so that's correct. That's a direct relationship to the people who your within the United States, right? That's correct. And all of this evidence was undisputed and unrebutted. The I. J. Found that Mr Argetta's testimony was credible, and we would say the government offered practically nothing, no testimony, no expert report and not any significant cross examination. So if you're if your argument, if your argument is persuasive, uh, the what we should, what we have to do is send it back for them to consider that. Is that right? So we would ask that you that you not just remain for consideration of the expert report, but actually bold that the record compels the conclusion that Mr Argetta, um, suffers a likelihood of severe pain and suffering if he returns to Honduras under prong one of cat and remain solely for determination of the second prong, which is acquiescence. That would be what we would ask you to do. Um, no, the agency hasn't had a chance to weigh in on acquiescence yet. Describe the acquiescence, uh, branch. Just sorry. Say what you mean by acquiescence. Oh, I'm sorry. The second prong of cat is that we have proved that a public official would acquiesce in the torture that Mr Argetta related. Why? Why shouldn't we give given that there was no consideration or no explanation given for the experts report for affidavit? Why should we at least give the agency an opportunity to perhaps explain why? Um, a little weight was given to that report. Wouldn't that be the more prudent thing to do? I think you could do that. But I think that the I. J. And the B. I. A. Have had every opportunity to consider the expert report. Mr Argetta has been in detention for eight years, and I think at this point the court has all the information it needs to decide whether the record compels the conclusion that he's going to be likely tortured. And and we would ask the only remaining question the agency is permitted should be permitted to consider is acquiescence. Um, unless the court has any other questions on cat, I will address the particularly serious crime issue in maybe a minute or so. Um, if that's all right with you. Yeah, that's fine. So I just want to the state of play right now in the circuit courts is that the eighth and ninth circuits have held that it is not a reason that the B. I. A. S. Decision in G. G. S. Is not a reasonable reading of the immigration statutes or even the B. I. S. Own presence. And I just want to address that the 10th Circuit has concluded otherwise. And we think this court should side with the eighth and ninth. And I just I just said the B. I. A. Gave two reasons for its interpretation in G. G. S. Neither which actually holds up. One is that the B. I. A. Said that a person's mental illness is best evaluated in his criminal case, and that doing so here would be a reassessment of the person's criminal culpability. But the false premise in that is that there's no reason to believe that, um, that a person's mental health actually was considered in a criminal case, particularly in a case like Mr Vargas. We know that he argued self defense, but we don't know if this PTSD played any role in the criminal case. That was that that was the P. S. PTSD was, uh, was was was was found long after the crime is not true. I mean, it wasn't wasn't years later that that that that it was analyzed, right? He was diagnosed with PTSD as part of his immigration proceedings by just that was sometime afterwards. It was. Yeah, it was in 2015, shortly before his release from prison. And so the B. I. A. Second rationale was that mental health is simply irrelevant to the key factor in particularly serious crime analysis, which is whether somebody poses a danger to the community. And we just think that that's an unreasonable interpretation. We're not suggesting that mental health evidence is always supports a petitioner or and certainly not that it's always dispositive. But even G. G. S. Acknowledged the in quote the impact mental illness can have on individuals behavior in this case is a perfect example. Mr Argetta's PTSD arose in part from violence perpetrated by the very people involved in his alleged particularly serious crime. His psychological report says that when he's re exposed to that same traumatic stimuli, he has flashbacks, panic attacks and other episodes that overwhelmed his sense. How do we know that that happened at the time of the of the attack here and the crime for which he was, he was convicted? Well, we don't, we don't, we can't know for sure. But we know that from the psychological evaluation that he suffered from PTSD at the time of the crime at the time of the crime. Yes. Um, that's what the psychological evaluation says. And and so that can be taken into consideration. I mean, and we would say that this evidence is critical to whether Mr Argetta poses a future danger to people other than his former attackers. That is like to people who would not necessarily trigger his PTSD. Mr Rayfield, there's two procedural issues. I just want you to get your one. One is the A. G. As you know, is reconsidering this precedent. The government wanted to adjourn and stay this proceeding, which we denied. But the fact of matters, they are potentially reconsidering this legal issue. Um, and then the other one is that my understanding is another panel has this legal issue before it's already been argued several months ago. So, um, my question to you, I guess, is if we were to agree with you on the cat issue and we're going to remand on the cat issue, would there be any need for us to wait for the other panel or somehow try to decide this issue given that you're going to be going back? And if the A. G. Does revisit that precedent and overrule that precedent, won't you then have an opportunity to again raise this below? Or am I missing something? I don't think you're missing anything. Um, as to the A. G. So our our position is that especially given the length of his detention, there shouldn't be any delay in in resolving this case. That's our that's our broad, broad position. But as to the A. G. Um, the reason there's a good reason to decide it now is that the even if the regardless of which way the A. G. A. G. Comes out, this court is still going to need to construe the statute. Um, like the if the A. G. Overrules G. G. S. It will no longer have to give that decision Chevron deference under any, you know, under any precedent. But, um, but the court is still gonna have to decide whether mental health is part of the particularly serious crime analysis. Well, not unless the government if the government decides they're gonna let it be part of it. How's who's gonna be contesting that? In other words, decides it should be part of the analysis. Who's gonna bring it to us? Well, it would be. It would. It would be before you in this case now. So I'm not sure what the I'm saying is we remand the case and it goes the other way. It will. I think your client, the opportunity then to raise it below raise this mental health issue below. Or am I missing something? Your change the precedent, right? Forgive me if I'm misunderstanding. I I'm just wondering what the I'm trying to just sort out what the action of this court would be. We remand on the cat, and we say we don't need to decide the mental health issue on a particularly serious crime at this juncture because it's under reconsideration by the A. G. And we're remanding anyway. And, uh, this presumably the that will then get, you know, this potentially could be mooted out below. In other words, if if the A. G. Reverses the precedent allows mental health, um, then your client will get an opportunity to more fully raise it, I guess, below, and we wouldn't have to decide it. But fair enough. I think that I think that makes sense that I guess the action would be you would grant the petition as to the particularly serious crime issue, but just to remand in light of the A. G. A. G. S. Decision. Would that be? Is that couldn't couldn't couldn't the I. J. Find a particularly serious crime irrespective of what is decided by the A. G. On on that issue. I mean, as a matter of fact, no matter you know, it's it's still a particularly serious crime, given that he buried a knife into the guys ahead and got eight years in prison for that. That sounds like a pretty serious crime. I. J. Can certainly conclude that could make that factual finding. But the legal error that we are raising on appeal is that the I. J. Found that it was unable based on B. I. A. Precedence to consider. No, it didn't. It didn't. It said in an alternative ruling, even if I could consider this, I would find that, as Judge Sack pointed out, it's particularly serious. I thought your point on that one was that the B. I. A. Did not adopt that portion of the decision. I thought that was your legal argument on that issue. That's correct. And I misspoke that that that's that's our position that the I. J. Did decide it in the alternative, but the B. I. A. Only adopted the part of the decision that and therefore and therefore we cannot deny the petition on on that  because because because the B. I. A. Did not rule on. Yes, that's right. Um, and I think so. I think yes, just to get back to Judge Bianco's question, I think that we would my client would have no issue with remanding based on the cat issue and and remanding solely on the particularly serious crime issue in light of whatever the A. G. Decides if that's what you're contemplating. And I see I'm way over my time. I very fast. So I wouldn't worry about it. I really appreciate that. And I'll turn it over to my colleague, Miss Matthews, to address the visa issue. Good, Miss Matthews. We won't credit his time against you. Thank you. And Matthews for the petitioner here. The I. J. This court should also remand because the immigration judge erred in refusing to adjudicate a waiver of inadmissibility that would have allowed Mr Argetta to apply for a U visa Specifically, the immigration judge refused to adjudicate a web waiver found at eight U. S. C. 11 82 D. Three A. Two. Um, this court should join the 7th, 11th and 4th circuits in finding that the statute gives the authority to adjudicate such waivers. The plain language of that section allows for inadmissibility waivers, quote, in the throughout the I. N. A. And regulations. Immigration judges are empowered to act as delegates of the Attorney General, specifically at eight U. S. C. 1101 B. Four. And then in the regulations at eight C. F. R. 11003 10 A. That provision gives immigration judges broad authority to act as delegates, and subsection B gives them broad discretion to exercise their independent judgment in in cases that come before them. Further, the regulations at eight C. F. R. 12 40.1 A. Provide that they may take actions consistent with the law in order to adjudicate their cases. Because the statute is clear, there is no need for deference to the agency. And this is precisely what the 7th, 7th and 11 circuits found. Even if the court were to find that the statute is ambiguous, there is similarly no deference owed, um, to the agency concerning the regulations because as I just went through the regulations that empowering immigration judges to act as the Attorney General, Attorney General's delegates are clear and therefore no air deference is afforded. And this is precisely what the let me let me ask you another similar practical question. I asked him Mr Rayfield on his issue. It my understanding is that since this issue came up and, um, they refused to consider it in light of U. C. I. S. Having it under consideration that U. C. S. Has now denied the waiver and found him ineligible for the U visa. So I guess my question is notwithstanding how interesting this issue is that you might be presenting to us. Why do we if we are going to remand the case, we decide to remand the case on the cat claim and or the particularly serious claim. Um, isn't this essentially moved? Because now the agency there's been a denial and the agency will clearly decide this issue along with all the other issues that it would have to decide on the remand. Where am I missing something? Uh, there are two reasons why the court should consider this issue. First, um, Mr gets his U visa application is actually pending on appeal. It was originally denied based off of the denial of the inadmissibility waiver. Um, and it is currently, um, the denial. We appeal the denial. Um, secondly, even if Mr Argetta were issued an order of deportation, he could still pursue the U visa. That would not preclude that is an order. I understand that. I understand it's separate, but let me go back to your first point. So there is a separate appeal that's gonna go before another panel on this on the visa denial. Is that what you're telling me? It's an administrative appeal on the on the administrative appeal. Okay. Yeah. Would you do me a favor for for the for the simple judge and just to make sure that I'm not on the wrong road here. What's a U visa? How would you describe a U visa in a victims of certain crime to remain in the United States? Um, such that they may assist law enforcement in investigating and prosecuting the crimes against them. Right. Thanks. I just wanna go back. I'm now even more confused on the procedural issue because if it's an administrative appeal, you're asking us to tell the agency you didn't have to. You didn't have to wait for U. C. I. S. To make a decision. You could have decided, you know, independently. And but the posture of the case now is because U. C. I. S. has decided it is before, uh, administrate right now before them. So why are we? Why would we decide this issue? It seems completely moved at this point as relates to your client. Uh, Mr. Get up did apply for a waiver of inadmissibility under different under Section D. Um, 14 as well as D before U. S. C. I. S. However, if the immigration judge independently waived his inadmissibility that U. S. C. I. S. Would therefore be able to adjudicate his, um, you visa application. So it's a different standard. You're saying that the current appeal on the U. B. Says it's not gonna compass all the arguments you need to make with respect to that. Is that what I'm hearing? Well, as a threshold matter, Mr Argetta would have to get away, would have to have a waiver of inadmissibility in order for U. S. C. I. S. To grant the U. B's on the on the other problems that that he is has been a victim of a certain type of crime that he has been helpful to law enforcement on DSO on. So the waiver of inadmissibility is a predicate to them being able to grant him a U visa on for that reason. If an to as we believe that as the statute clearly empowers him to do to adjudicate the waiver of inadmissibility and were to grant Mr Argetta such a waiver, he could then go before U. S. C. I. S. In order to obtain the U visa. But is that different from reviewing the denial of the waiver in terms of what the standard would be? Isn't it the same issue or or it's a different standard if they were not proceeding after there's been a denial of the waiver? Um, the U. S. C. I. S. May consider the waiver under Section D 14, which is a separate, um, separate provision which allows you visa holders to get to get a waiver of inadmissibility for for that section. And that is, um, slightly different than the provisions under D three, which are for many types of non immigrant visa applicants. Okay. All right. I understand. All right. Thank you very much. And Mr Rayfield has two minutes for rebuttal. Um, okay. And the smart for the government. Good afternoon. Um, it's Brooke Mauer for the respondent, the attorney general. Um, I guess I'll start with the U. V. Stuff. I may. Um, the government is of the position that the matter is moot. And I'm actually just aware I was unaware of the appeal that was currently pending, which basically strengthens the government's position that this court would not be in need to made this determination. I mean, the I. J. Declined and then to consider the waiver and the U. S. C. I. S. Denied the waiver is a matter of discretion. So these things are under review right now for the agency and would argue that this is moot. I thought what I was hearing from Miss Matthews, if I was understanding correctly, is that if if the if the I. J. Believe they had some independent authority to do this independent of reviewing the denial of the waiver that I guess a different standard would potentially apply. Or is that not correct? I don't believe so. I believe. I mean, right now, I mean, it was a review for, I mean, the remand they requested remand back to the I. J. To have them reconsider the U. V. S. And, you know, the board basically looked at it as an abuse of discretion kind of issue. And I mean, the statute clearly states that U. S. C. I. S. Had the purview for granting both under D three and D 14. And that was left to them. And that determination was made in September. Okay. Um, I guess I'll turn next to the I mean, as you as you noted earlier, we had also noted that matter of B. Z. R. Is a case that the attorney general had is asked to refer to himself. Briefing won't be completed until the 24th, which unfortunately is on Monday. And I have no timeline as to when they're going to render a decision on that matter and in what way it will go. Um, um, as far as it's consideration, um, as, as counsel noted, you know, the I. J. And the court noted the I. J. Did make the considerate the determination of the particular serious crime analysis pursuant to N. A. M. And noted that even if that mental health was a requirement to be considered, that even considering that upon the record and everything in total, it still not have changed the ultimate outcome of the P. S. C. Analysis. And the government hold problem is the B. I. A. Did not certainly did not explicitly adopt that alternative ruling. I know you made the argument in the briefs that somehow implicitly it was doing so. But I was finding that not particularly strong. Yeah. So I mean, and in that case, if you would find that the board didn't explicitly adopted, then it would have to go back for it to redetermine like the I. J. S. Alternative determination based on that fact. Well, when also additionally considering alternative, it also potentially would allow time again for the decision. Correct. In matter of matter of B. Z. R. Okay, that is correct. And then finally, um, the government still holds that the I. J. Did not Aaron holding that petitioner failed to make his, um, meet his burden of proof for, um, cat, especially with the fact that the string of suppositions that petitioner is making in order to form the chain of events that need to take place. Um, the torture that he has claimed they took place in the United States. He's not demonstrated that any of the individuals that was that were in the United States are now in Honduras, where he could be anything beyond the affidavits stating that he has an individualized risk of harm there. Well, yeah. Yeah. First of all, you have an expert act for David that was not addressed at all, which is problematic at its core. You want to address that? Well, as you know, as as we had stated in our brief, we felt that the I. J. Incorporated everything in by looking at everything in the evidence and did not have to expressly indicate the consideration of that affidavit. Um, but that affidavit was a pretty important part of their proof that yet an expert talking about the conditions and made a specific opinion that Mr Agueta was at very high risk of experiencing violence, torture and even death. If returned to Honduras specifically referenced in the following paragraph, the risk of being threatened or even killed by the August family. So would reference a particular family at issue here, and we have no idea why the I. J. Thought that that was not deserving of any weight. And that is correct. If the court does find that the I. J. Did not address this correctly, that is, that is of an ability for you to send it back for a determination, including that. What about Mr Rayfield's argument that the evidence is so strong in favor of his client? We should only send it back on acquiescence. What's your response to that? I would I would state that we it's still speculative based on the assumptions that are pieced together by the petitioner. We don't have evidence that any of these people are even back over there, or if anybody has an interest in him, we would hold that that is not sufficient to support a finding that he met his burden of proof. Well, we know someone has an interest in him based upon the mother and the neighbor who are in Honduras, right? That is correct. But that but like again, as the I. J. Found they haven't linked that to the to the torture and the things that were in here. Aside from he claimed that one was the Lagos family where he was. That wasn't the father. That was that was stating that his son was attempted or his family member, the father of one of the individuals who was involved in the dispute with their client. That is the center of this. So that's a pretty close relationship, isn't it? The but the Lagos person, I think, as the I. J. noted, was one of the aggressors in this case and not the victim that the petitioner stabbed. I think that was right. It's part of the same group. They were an associate of one another, I believe from the Yeah. So but the government would still stand and say that that's not sufficient enough to support an overturning of the I. J. S. Determination. Yeah. I seem to recall a case recent case that is has similarities to this case. I'm thinking of Manning. Uh, can you tell me what what what the relationship between our decision and Manning and this case is if you are prepared to do so? Um, I think we looked at, um, it sounded sort of similar to this. To do. I'm sorry. I'm like looking through. There's only one of me. Well, that's all right. I don't want you. Yeah, I just like, Yeah, I don't have. I don't know. There was no. There was no analysis of the expert report, and we we sent it back. I think we consistently do that. As always, the expert report. Obviously, there is the case law that says that the idea doesn't have to mention every piece of evidence. We assume that they consider, you know, the materials that are before them. But we sort of draw the line when it's a key piece of evidence as an expert report is so, um, I think, and yeah, and should that court make the determination and, of course, like sending it back for reconsideration of that would be appropriate. What's your argument? They had an argument in the briefs, an alternative argument, but it at least registered with me that even if you couldn't connect it directly to the group that, uh, Mr Agueta had, you know, the dispute within the United States. Um, it's still he's still it would be in danger from their clearly based upon the affidavits looking for him to kill him in Honduras. So why does it matter whether it's the Lagos family? Because what happened in the United States or some other reason that we don't know about isn't isn't he still in the same level of danger? It doesn't have the same group, in other words, to put him in danger under cap. No, I mean, I guess it doesn't have to be exact same people. But I mean, again, like the I. J. Was like unable to put like a sufficient basis there to find the torture or the I. J. What I'm suggesting to you in order for us to say that that wouldn't be enough on the cap, the I. J. Would have to say, I don't believe the mother. I don't think it happened. I don't believe the neighbor. Um, then, you know, there would be an issue as to whether or not it had been proven. But if there's no doubting of the credibility of the mother and or the neighbor, then somebody is trying to doors, right? Correct. And then, like, it would have to go back as far as, like, acquiescence. And you'd have to make a determination on that as well. All right. All right. There are no further questions from my colleagues will go to Mr Rayfield in rebuttal. Thank you, Your Honor. I want to, um, focus just a little bit on the on the scope of the remand because there's a very big difference. There's a very solely for the I. J. To consider the expert report and a remand that that holds that the record compels a conclusion that he is satisfied the first prong of cat. And I want to I want to make clear that our position is that even if you don't didn't consider the expert report at all, the evidence compels the conclusion that he's likely to face torture. So there's no need for a limited remand solely to consider the expert report. I think just jumping on, uh, Judge Bianco's point from a couple minutes ago, even if the events even if the two sets of events that the violence against him in two thousand seven and the end of threats to his family in 2014, even if those events were entirely unconnected, that wouldn't change the fact that several different people have been told in no one certain terms that Mr Argetto will be killed if he returns to Honduras. I Mr Argetta is also being targeted for reasons unrelated to his experience in the U. S. But there's no basis for that finding in the record. And if anything, it would make things more dangerous for him, not less. We would be depriving the agency of the opportunity to assess way the credibility of the mother and the neighbor. It seemed like the I. J. Because the I. J. Thought there was no connection or insufficient connection didn't opine on the credibility of that information or its reliability. So that's that's not something we do. Right? Isn't that something potentially the I. J. Could open up the hearing again and say, Okay, the Second Circuit has determined that if this is all true, there is a sufficient connection. So, um, you know, I need more testimony on this. I need more. I don't know exactly what the scope of the hearing would be, but would allow them to reopen hearing the focus more specifically on what the mother and the neighbor said. I mean, I think the I. J. Did address the mother and the neighbor's testimony that affidavits in his opinion, as did the B. I. A. The problem is that he just said there was an insufficient connection, but I don't I don't think he said I find them credible, but I believe business. You know, I'm focused on the credibility issue or the weight issue. I think we sort of skipped like the one thing that was said is like there's not enough connection. Well, he said that that wasn't the only thing he said. He said that I'm not trying to both. You know, I'm not trying to bolster the I. J.'s analysis, but what? But I think that he did consider the affidavits in his main position was that he found that there were certain inconsistencies in the affidavits. He found that, um, that that the failed, for example, with his with Mr Argetta's sister, he found that that, um, that because she didn't mention chicken littles, uh, uh, deportation to Honduras, that gave gave less way to his claim. He found, for example, that because, uh, Dilgio Rivera said he he he reviewed Dilgio Rivera's affidavit and wasn't and didn't think that there was enough of a connection to, um, that he was skeptical that that the comment by Fidel Lagos was about was about Mr Mr, uh, the lack of Alaska's as opposed to as opposed to some someone, someone else. So I think the I. J. Has had every opportunity to review this evidence and it's and given the length of detention and, um, and and the and the the state of the record. Now, I think I would respectfully request that the court make a firmer finding on the first prong of cat that the I. J. Was any bound by. And the other issue hasn't come up. The argument was in the briefings about the due process claim in the video conferencing of your client. I again, I just I think if we were to remand, that would become moot as well. Correct? Yes. Okay. I think that's right. All right. All right. Thank you very much to both sides. We'll reserve decision. Thank you very much. And everybody have a good have a good day. Thank you, Your Rodriguez. I'll ask her to adjourn court or since adjourned. Thank you to this. I'll transfer you now.